Lewis Evans Staggs

*v.*

State of Tennessee.

357 S.W.2d 52.

(*Jackson,* April Term, 1962.)

Opinion filed May 4, 1962.

176

Ray Hollis, Waynesboro, for plaintiff in error.

George F. McCanless, Attorney General, Lyle Reid, Assistant Attorney General, Nashville, for State.

Mr. Justice White delivered the opinion of the Court.

The plaintiff-in-error, defendant, has appealed from a conviction of murder in the second degree for which he was sentenced to serve ten years in the State Penitentiary, and has assigned errors.

The facts are that on November 18, 1960, at about 6:00 o'clock in the evening Maxine Stricklin, a little girl, aged twelve, lost her life when riding in an automobile owned by John Petty and driven by his thirteen year old daughter, Linda Gayle Petty. She was sitting on the front seat between the father and the daughter and the three of them were returning to their respective homes from

a visit to their neighbor, Johnny Ferrell, who lived on U.S. Highway Route 64 in Hardin County, Tennessee. They had traveled in a southwesterly direction on a graveled country road for a distance of about one-half mile when a truck operated by the defendant, Lewis Evans Staggs, approached them from the opposite direction. He was driving a Ford truck of one and one-half to two tons rated capacity which had a flat bed or stake body on it and according to the proof and pictures of the truck exhibited in the testimony, there was nothing on the bed of the truck except two pieces of rough lumber approximately two inches in thickness and eight inches wide and possibly ten feet in length which were chained to the bed of the truck. When the two vehicles collided one of these pieces of lumber or board which was evidently extending beyond the bed of the truck came through the windshield of the Petty automobile striking Maxine Stricklin with such force and violence about her face and head as to bring about her death within a short time thereafter.

According to the testimony of Mr. Petty and his daughter, Linda Gayle, their automobile was traveling along a road known as Old Town Road and it was proceeding in a west or southwesterly direction on said road at about ten to twelve miles per hour and was well on its right hand side of the road. Linda Gayle says that she saw the truck approaching her from the opposite direction and that it was going pretty fast and was in the center of the road and as it approached her car it cut over and struck her car and then continued on down the highway. In an effort to avoid the collision, Linda Gayle pulled the wheels of her car onto the shoulder of the road on her side and they were within six or seven inches

of the drainage ditch running along the side of the road when the collision occurred.

Mr. Petty testified that the road at the point of the collision was twenty to twenty-five feet wide. That as the truck approached them its left wheels were over the center of the road and the truck angled toward the Petty automobile as it came down the highway. He estimates the speed of the truck to have been sixty to seventy miles per hour, which was based upon his observation of the truck before and after the accident. He saw it proceed down the highway after the accident occurred and so did Linda Gayle.

The Highway Patrolmen and all other witnesses who saw the Petty automobile after the accident say that the right wheels were within inches of the drainage ditch and that when the wrecker pulled the car away the right rear wheel slipped off into the ditch. One witness testified that the tracks leading back from the car for a distance of fifteen to twenty feet were ''right next to the ditch line''. There were other tracks made by the dual wheels of the truck which were on the wrong side of the road, or on the side occupied by the Petty automobile, and which after leading to the point of collision traveled back across the highway and into the drainage ditch and then out and on down the highway.

One witness testified that he saw the truck parked across a road in a curve at about 6:45 o'clock on the evening in question and this was at a point six or seven miles from the scene of the accident. He further testified that the defendant was in said truck and was slumped across the steering wheel. That he reported this to the law enforcement officials of the City of Savannah and

when they arrived at about 10:00 P. M. the truck was still parked in the same way and manner and the defendant was still in the truck lying limp across the steering wheel.

They say that when the defendant was aroused he was very arrogant, and was in a drunken condition and when asked about the accident he replied "I don't know anything about an accident, I ain't had no wreck".

This is the only statement that the defendant is recorded as having made about this entire matter. He did not testify in his own behalf.

The only testimony offered in behalf of the defendant was that of a photographer who made some pictures of the scene of the accident several days after it had occurred. He testified that glass and debris was found by him at the point which he understood to have been the place of the collision, on the defendant's right hand side of the road as he traveled in a northeasterly direction.

The board which brought about the death of the little girl was broken by the impact and one end was found at the scene and the other end was found still chained to the bed of the defendant's truck.

From reading the record in this case we are convinced there is no doubt about the guilt of the defendant.

█ It has been repeatedly held that a guilty verdict approved by the Trial Judge, accredited the testimony of witnesses for the State, and establishes their credibility. It displaces the presumption of defendant's innocence, and raises a presumption of his guilt. Upon appeal

he has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence.

The defendant's assignments of error 1 through 8 and 10 through 14 contend that the evidence preponderates against the verdict of the jury and in favor of the innocence of the defendant. He also insists that there is no showing in the record of malice and there was no showing of causal connection between the acts of the defendant and the death of the little girl. The jury has found against all of these contentions and correctly so, in our opinion.

■ The defendant contends that under the facts of this case the alleged driving of the truck by the defendant while intoxicated would not constitute such malignity as would support a conviction of murder in the second degree. It is further contended that the death of the little girl was caused by the negligence of the driver of the automobile in which she was riding. These are questions of fact to be determined by the jury under the proper charge from the Court and such facts have been determined adversely to the contentions of this defendant.

■ The 14th assignment of error is to the effect that there is no malice shown, either express or implied and, therefore, the conviction was erroneous as a matter of law. This defense has been rejected by the Court on several occasions notably in the cases of *Keller v. State,* 155 Tenn. 633, 299 S.W. 803, 59 A.L.R. 685; *Owen v. State,* 188 Tenn. 459, 221 S.W.2d 515; *Rogers v. State,* 196 Tenn. 263, 265 S.W.2d 559, which was an opinion delivered by Mr. Chief Justice Neil, and in it the Court said:

"The intent to commit a criminal act * * * is evidenced by the act itself, so in the case at bar intent

is evidenced (1) by the wilful drinking of intoxicating liquors, (2) knowingly driving an automobile while drunk at a dangerous and reckless rate of speed, to-wit 60 and 70 miles an hour, and (3) with knowledge that his condition in thus driving was perilous to every person on the highway including the defendant himself. It would be a mockery of the law for one thus guilty of violating the criminal laws of the State, enacted for the protection of human life, to say he could not foresee the consequence of his act.'' 196 Tenn. at pages 266-267, 265 S.W.2d at page 560.)

Again in the case of *Edwards v. State,* 202 Tenn. 393, 394, 304 S.W.2d 500, in an opinion prepared for the Court by Mr. Justice Tomlinson, it was stated in a headnote, which we approve, as follows:

''Criminal intent is supplied by the very doing of an unlawful act which is malum in se and it is not necessary to show that death was the natural and proximate result of such act.''

''Willfully becoming intoxicated, or partly so, and driving automobile while in such condition with knowledge that driving in such condition is perilous to human life constitutes murder in the second degree.''

In the case at bar the proof is that the defendant was drunk and was driving his truck down a narrow graveled road at an unlawful rate of speed and on his left or the wrong side of the road and after colliding with the automobile in question he failed to stop and render the aid that any normal person, sensible to common decency, would have rendered but continued on for a distance of six to seven miles where he stopped with his truck parked

across the highway and in the curve of the road and slumped over his steering wheel in a drunken condition. He remained in this condition and position until about 10 o'clock on the same evening when apprehended by the officers. At this time he denied any knowledge of the accident.

His whole course of conduct indicates a complete and total disregard of the consequences of his unlawful acts and we, therefore, believe that the jury was well justified in concluding that the criminal intent necessary to support murder in the second degree was supplied by the very doing of the acts which brought about the unfortunate death of Maxine Stricklin.

■ The jury gave the minimum sentence permitted by law for murder in the second degree. Therefore, the assignment that the jury acted through passion, prejudice or caprice is without merit. See *Stallard v. State,* 209 Tenn. 13, 348 S.W.2d 489.

The defendant next complains in his final assignment that the District Attorney General inflamed the jury and aroused their passions in his final summation to the prejudice of the defendant.

In the case of *Turner v. State,* 188 Tenn. 312, at page 324, 219 S.W.2d 188, the Court quoted with approval the following:

" 'It is thoroughly settled, under our practice, that objectionable argument or improper remarks of counsel afford no ground for a new trial, where no objection is made or exception taken at the time of the argument. *Smith v. State,* 90 Tenn. 575, 18 S.W. 248; *King v. State,* 91 Tenn. 617, 20 S.W. 169; *Morgan v. Duffey,*

94 Tenn. 686, 30 S.W. 735; *Ferguson v. Moore,* 98 Tenn. 342, 39 S.W. 341.' *Sherman v. State,* 125 Tenn. 19, 47, 140 S.W. 209, 216.''

■ There was no objection made to the argument of the District Attorney General at the time. However, it appears that the jury was not inflamed by the remarks of the prosecuting attorney as the verdict rendered by it shows that the minimum sentence for the crime was decided upon, fixed and returned by the jury.

We have carefully considered all of the assignments of error and we find them to be without merit. Therefore, they are all overruled and the action of the Trial Court is affirmed at the cost of the plaintiff-in-error.