VICTOR FLIPPEN AND FRED SMALLING

*v.*

STATE OF TENNESSEE.

365 S. W. 2d 895.

(*Nashville*, December Term, 1962.)

Opinion filed February 7, 1963.

Rehearing Denied March 20, 1963.

J. C. McMurtry, Gallatin, for plaintiffs in error.

George F. McCanless, Attorney General, Walker T. Tipton, Assistant Attorney General, Nashville, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

The plaintiffs in error were indicted for murder of a little boy who was drowned as a result of an automobile in which he was riding begin struck by an automobile being driven by Smalling. The little boy was thrown into a lake where he died. These parties were convicted of involuntary manslaughter. Smalling was sentenced to serve five (5) years in the State penitentiary, and Flippen was sentenced to serve eleven (11) months and twenty-nine (29) days in the county jail. Both have appealed. After reading the record, authorities, etc., we are now in a position to determine the matter.

This is another one of the numerous cases (there are literally dozens of reported cases in this State), which have grown out of automobile accidents. One guilty of driving an automobile wherein the acts of driving are *malum in se* are guilty of a crime, while those guilty of acts *malum prohibitum* are merely civilly guilty. The basis for these two types of injury were probably first set forth (*malum in se*) in *Keller v. State,* 155 Tenn. 633, 299 S.W. 803, 59 A.L.R. 685, while that of *malum prohibitum* was first set forth in *Copeland v. State,* 154 Tenn. 7, 285 S.W. 565, 49 A.L.R. 605. By Shepardizing these cases numerous cases referred to may be found. A sound expression of the rule of law which controls cases involving criminal negligence with an automobile was made by

this Court in *Potter v. State,* 174 Tenn. 118, 127, 124 S.W.2d 232, 236, thus:

"The test appears to be whether or not the driver, violating the highway statute in the particular above considered, does so consciously, or under circumstances which would charge a reasonably prudent person with appreciation of the fact and the anticipation of consequences injurious or fatal to others."

This action grew out of an automobile accident which happened on September 22, 1961, on Highway 31 between Nashville and Gallatin. A little boy by the name of Kevin Evitts was riding in the backseat of a station wagon which was being operated by his mother. They were on their way from Somerset, Kentucky, to Nashville, and had reached a point between Gallatin and Nashville when the accident occurred. The highway at this particular spot was a four-lane highway with a raised median strip separating the traveled portions of said highway. Mrs. Evitts was driving her car in the most right hand lane for south bound traffic at a speed of approximately sixty miles per hour. She states that while she was driving along thus she was suddenly pushed from behind and her car as a result thereof left the road crashing through a utility pole and landing in a lake, which was alongside the road. At the point where her car went in the lake it was approximately twenty (20) feet deep. Mrs. Evitts managed to get out of her car onto the surface. About the time she reached the surface she suddenly felt an electrical shock from the wires of the downed utility pole. She stated that she saw her son, Kevin, on top of the water calling for help but apparently lost consciousness at this moment. About this time a motorist who was passing stopped his car and made an effort to save the

boy but was unable to do so and this motorist was severely shocked and almost drowned. The small boy disappeared in the lake and his body was not recovered until some forty minutes later.

The police began an investigation which led them first to plaintiff in error, Flippen. When Flippen was asked about the accident he stated that he had driven with plaintiff in error, Smalling, on this morning from Gallatin to Nashville and that while on their way they did brush up against, or just barely tapped a car, but thought nothing of it. Flippen further stated that he had been drinking on that morning. The police after talking with Flippen, then proceeded to locate Smalling and told him that there had been an accident in which the Evitts boy was killed and that they had a warrant for his arrest. Smalling at this time admitted having been the driver of the car that had hit this car but he stated that he only tapped it and didn't think there was any damage done. After further discussion Smalling advised the police where his (Smalling's) car could be found. This car of Smalling was located at a garage in Nashville where pictures of the damage thereto were taken. The record has a number of exhibits in it of pictures of this car. These exhibits show that the right front fender of the car over the front headlight was severely bent in and the right side of the fender was scraped and scratched and the right front tire was flat. The police officer took scrapings of this car and from the car in which the deceased was riding, and a comparison of these revealed that they were the same; in other words that the Smalling's car had hit the Evitts' car. A picture of the back of the Evitts' car was taken, which shows that it was hit some eighteen inches or two feet over from the left hand side on the left rear.

Smalling did not testify but Flippen did. Flippen stated that on the morning of this accident he along with his brother consumed a half pint of liquor and that he and Smalling had stopped for a beer at Gallatin just prior to the accident.

The assignments raise the following questions, (1) that the evidence preponderates against the verdict and in favor of the innocence of the plaintiffs in error; (2) that the court erred in admitting testimony of State's witnesses concerning the discussions and admissions of the plaintiffs in error to these officers, because they had not been warned prior to making these statements of their constitutional rights against self-incrimination.

There were no eye-witnesses to the accident, but this record beyond peradventure of a doubt shows that this little boy was drowned in this lake as a direct result of the car in which he was riding being knocked off the road into the lake by the car driven by the plaintiff in error, Smalling.

These plaintiffs in error admit that the car in which they were riding struck the Evitts' car, but they claim that it only brushed it as they passed and they thought nothing of it. The jury, judging from their verdict and clearly they could do so and had a right to do so under this evidence, very obviously did not believe that these plaintiffs in error just brushed the Evitts' car. The jury was warranted in finding from this evidence and the physical facts involved in this case that they struck this car, remembering, of course, that the Evitts' car was going sixty miles an hour; they, the plaintiffs in error, admit that they passed this car at this rate of speed, and the physical facts shown by the pictures show that they

must have struck it a rather severe blow and knocked it immediately off the highway into the lake. These pictures, admittedly, of the respective cars are self-evident as to the damage done to the cars. They clearly show that Smalling's car did more than just brush against the car in which the deceased was riding, and that it must have taken a considerable lick to cause the damage that it did to the car. When this is considered with the fact that Mrs. Evitts was driving at the rate of sixty miles an hour, it is obvious that Smalling's car had to have been traveling at an extremely excessive rate of speed to have caused the damage it did to their car.

Clearly the evidence in this record establishes that this homicide was not the result of mere misadventure, but directly resulted from a criminal want of care and caution. One could almost reach the conclusion that the plaintiff in error's car literally ran over the other car, knocking it off the road into the lake. The State cites and quotes from the case of *Lee v. State,* 41 Tenn. 62, as follows:

"So, if a person driving a cart, or other carriage, happens to kill, and it appears that he saw, or had timely notice of the mischief likely to ensue, and yet drove on, it will be murder."

Here one of these parties who was in the Smalling car looked back over his shoulder and after the lick was struck did not see the car any more. They went on then to Nashville and put their car into a garage and didn't have it fixed until after the officers had seen it. What they thus did amounted to leaving the scene of an accident and attempting to escape and hide the car in which they were riding. Of course, there is no evidence of this fact one

way or the other, but the jury were clearly warranted in reaching this conclusion. Under the authorities that may be found by Shepardizing the Keller case, supra, and particularly in the recent case of *Cordell v. State,* 209 Tenn. 219, 352 S.W.2d 234, this conviction for involuntary manslaughter is inescapable.

The serious question that is presented to us by this record is the conviction of the plaintiff in error, Flippen. He had no control over this car as far as this evidence shows and was only a passenger therein. He was first only held as a material witness. It is true as far as the record shows he did nothing to try to stop Smalling and get him to go back and see about the wreck or anything of the kind. He says he looked back over his shoulder after the impact with the other car and did not see it. It then became his duty to warn the driver that something serious must have happened and to go back and assist. He was present and aided in hiding the car in which he was riding as above set forth. A crime had been committed— the violation of sec. 59-1001, T.C.A. These acts of Flippen clearly were sufficient, if believed by the jury and they evidently were as shown by their verdict, to make an aider and abettor of him. An aider and abettor is one who advises, counsels, procures or encourages another to commit a crime. See definitions collected in 22 C.J.S. Criminal Law sec. 85. See also Wharton's Criminal Law and Procedure (Anderson), Vol. 3, pages 189 and 190.

In *Eager v. State,* 205 Tenn. 156, 325 S.W.2d 815, the passenger in the car there was drunk as well as the driver; the passenger assisted in fixing the car after the party therein was killed and other things which was some evidence that he was an aider and abettor. In *Stallard v. State,* 209 Tenn. 13, 348 S.W.2d 489, the aider and

abettor who was convicted along with the principal in that lawsuit likewise participated in the scheme for a drag race wherein a person was killed. As we see it there must be some evidence of a participation in the crime before one can be convicted as an aider and abettor. By sec. 39-109, T.C.A., aiders and abettors are deemed principal offenders and may be punished as such. Before one can be thus convicted there should be some evidence, at least circumstantial, that the aider and abettor participates in the crime. This record contains some evidence and many circumstances of his participation. An excellent statement of what is required may be found in 16 C.J., sec. 112, page 125; 22 C.J.S. Criminal Law sec. 85.

▪ The testimony of what these plaintiffs in error told these officers in reference to this crime was clearly admissible, and it is not necessary for the officers to inform them before they voluntarily made these statements to them of their constitutional rights. The record does show though that they were so informed and yet made voluntary statements to the officers as hereinbefore reiterated as to what happened. This record is clean insofar as errors are concerned and under the facts of the case and the law it is clearly established that plaintiffs in error are guilty and the judgment against them must be affirmed.

On Petition to Rehear.

BURNETT, CHIEF JUSTICE.

The plaintiffs in error filed herein a courteous petition to rehear. This petition though is nothing more nor less than a reargument of what has heretofore been argued before the bar of this Court and in the briefs originally filed. It is questioned though in the petition to rehear that

we shouldn't have reached the conclusion that we did, because it is argued from certain statements of the witnesses cited that this conclusion was not supported by material evidence. We, after reviewing the matter, are satisfied without a doubt that the jury trying this case were clearly justified in reaching the conclusion that they did for the reasons stated in the original opinion.

It is true that there is evidence on behalf of the plaintiffs in error to the contrary of the conclusion reached by us and by the trial court, but it must be remembered that where there is competent evidence to the contrary and the jury accepts this evidence they are the ones to credit the testimony and are the final arbiters as to the credibility of these witnesses. The jury likewise may draw reasonable and natural inferences from proven facts and physical evidence, such as the speed of the car and the damage done to the car as a result of being struck. There was evidence of the speed of the car that these plaintiffs in error struck, and it was perfectly natural for the jury to reach the conclusion that the speed of the car of the plaintiffs in error was exceeding that of the car that was struck since they passed it and didn't stop. After considering the matter further we are satisfied that what we have stated in the original opinion is the correct and logical conclusion to be drawn from the record.

Petitions to rehear are not filed for the purpose of rearguing the case on points already considered and determined unless there is some authority which has not been discovered, or which has been overlooked by the Court. The office of petition like that here is to bring to the attention of the Court matters overlooked not those things which counsel supposes were improperly decided.

See *City of Nashville v. State Board of Equalization,* 210 Tenn. 587, 360 S.W.2d 458, and particularly at page 472, The petition to rehear must be denied.