STATE of Tennessee, Appellee,

v.

**Darrell Wayne TAYLOR, Appellant.**

Supreme Court of Tennessee,
at Jackson.

July 3, 1989.

Brett Stein, Memphis, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Norma Crippen Ballard, Asst. Atty. Gen., Nashville, for appellee.

FONES, Justice.

This is a direct appeal from a conviction of murder in the first degree and sentence of death, based upon the aggravating circumstance that the murder was committed during the perpetration of a robbery, and a previous conviction of a felony involving the use or threat of violence to the person.

The murder victim, Darrell Richmond, was released from Shelby County Jail on the morning of 17 June 1986. A check in the sum of $603.26 was issued to him at the time of his release that closed out his account with the inmate commissary of the Sheriff's Department. He promptly cashed the check with the help of a bail bondsman. Paramedics from the Memphis Fire Department responding to a call found Richmond dead, shot in the back of the head, at 1:30 a.m. on 18 June 1986. He was lying face down on the sidewalk with his head hanging over the curb. A needle and a syringe containing a brown colored liquid were found near the body. Richmond's urine tested positive for cocaine.

Defendant Darrell Wayne Taylor and Verdis Lee Chambers were indicted for the murder of Richmond. The trial judge granted the State's unopposed motion for severance.

Two eyewitnesses to the killing testified. Kertenia Miller, age 17, testified that she was in the rear seat of Willie Simpson's (also known as Willie Green) car; that Verdis Chambers was seated to her right and Willie Simpson to her left; that defendant Darrell Taylor was driving the car and the victim Richmond was in the front passenger seat, directly in front of Chambers. Just before Richmond was killed he was giving himself a shot of cocaine. Ms. Miller testified that defendant "looked back" at Chambers and "nodded" and Chambers, "raised up the gun and shot Darrell in the back of the head"; that defendant opened the car door and pushed Richmond out on the street and he and Chambers got out of the car; that defendant took the gun from Chambers and shot at Richmond as he was lying face down in the street. They went through Richmond's pockets, took off his shoes, got everything they wanted, split the money, got back in the car, made two stops for clothes and drove to Nashville.

The other eyewitness was Willie Ray Simpson. He had driven Richmond downtown to cash the $600 check, apparently during the morning of 17 June, but at the time of the murder he was in the back seat. He had turned the driving over to defendant because he had been drinking all day. He said he was half-asleep and was pretending to be asleep. He testified that he saw defendant pass the pistol to Chambers two or three hours before the murder, and that the shooting took place as Richmond was walking away from the car. Richmond said he was "fixing to go, and Verdis told him to come back, he wanted to talk to him." Chambers was standing in front of the car and they were 30 or 40 feet apart, when Chambers fired one shot. He testified that defendant and Chambers had been trying to borrow money from Richmond and Richmond refused—said he had spent enough that day. Simpson estimated that Richmond had $200 to $250 on him at the time of the murder, and he saw Chambers and defendant take the money from the dead man's pocket.

The victim lived with his sister, Daphney Richmond, at 2124 Eldridge Street in Memphis. She testified that her brother, Willie Simpson, Verdis Chambers and defendant had grown up in the same neighborhood and were friends; that she observed her brother in the company of all three of them during the afternoon of June 17th; that around 4:00 p.m. she saw defendant and her brother in the hallway of the Richmond residence, defendant had a .32 or .38 caliber pistol and her brother was upset. She testified that her brother had about $500 around noon, that he showed her the money and gave her $10; that he kept his money in his shoe. On cross examination she was asked if her brother and defendant were arguing about cocaine when she saw them at 4:00 p.m. She gave an affirmative response. She last saw the brother about

10:30 p.m., on the 17th of June. He was alive and well at that time.

Antonio Branch was a neighbor and friend of the victim and also a friend of defendant. Branch testified that Richmond had $400 or $500 around noon, that he was in the company of defendant and Willie Simpson on the afternoon of the 17th of June and that he saw a .32 or .38 caliber pistol in Simpson's car that afternoon. He also observed defendant and Richmond arguing in the hallway of Richmond's residence.

Defendant contends that the evidence was insufficient to support a jury verdict that he was a principal or an aider and abettor; that he did not know that Chambers was going to commit murder and the necessary intent to support the offense was not proven beyond a reasonable doubt. The argument advanced in support of that issue was that Simpson and Miller's testimony was in direct conflict, and that Miller had given a statement to a police officer in July 1986 in which there was no mention of defendant "nodding" to Chambers just before the killing.

■ T.C.A. § 39-1-303 provides that all persons present, aiding and abetting, or ready and consenting to aid and abet, in any criminal offense, shall be deemed principal offenders and punished as such. An aider and abettor is one who advises, counsels, procures or encourages another to commit a crime. *Flippen v. State*, 211 Tenn. 507, 365 S.W.2d 895 (1963). There was evidence that defendant provided Chambers with the murder weapon, gave the signal when to shoot, as the victim was injecting cocaine, pushed the victim's body out of the car, got his gun back and shot at the victim, joined Chambers in searching the body and shoes and divided with Chambers the money and cigarettes found on the body. Both defendant and Chambers had been trying to borrow money from Richmond and had been rejected. Those acts of defendant aiding and abetting the trigger man, Chambers, stand uncontradicted in this record, and clearly satisfy all of the elements necessary to find that defendant

was a principal offender. This issue is without merit.

■ Defendant contends that the failure of police to bring him before Illinois judicial authorities immediately after his arrest required suppression of his statement to Chicago police officers regarding his role in the murder of Richmond.

Chambers and defendant were arrested in Chicago pursuant to a warrant for murder from Shelby County, Tennessee. Approximately 15 minutes after their arrest they were identified by Kertenia Miller at police headquarters. Defendant was then placed in an interview room where he waited alone for an hour or an hour and a half. He was then interviewed for approximately thirty minutes, and an hour to an hour and a half later was taken to Central Detention, where persons arrested on out-of-state warrants were processed. The record is silent with respect to when defendant was taken before a judicial officer, but apparently his complaint is that during the three or four hours between his arrest and removal to Central Detention he was not taken before a judicial officer.

The police officers testified that he was advised of his rights at the interview, acknowledged that he understood them and that they made no threats or promises to obtain defendant's statement. Defendant does not contend that any violation of his constitutional rights was involved in obtaining his statement. His contention is based upon an Illinois statute that is part of the Uniform Rendition of Accused Persons Act, that, if applicable, expressly requires that persons be taken before the circuit court immediately upon arrest pursuant to a warrant. *See* Ill.Rev.Stat. ch. 38, § 157-22 (1975). That Uniform Act provides the procedure for arrest and removal of a person, present in the State of Illinois who has been accused of a crime in another state and who, having been released from custody in the other state, prior to a final judgment, violates the terms and conditions of the release. The statute relied upon by defendant is not applicable. Defendant's status in Illinois was that of a fugitive who had never been in custody, and thus was

not released upon terms that were allegedly violated. There is no merit to this issue.

■ Defendant contends that the trial judge erroneously excused Teamora McClain for cause.

Ms. McClain said that she was against capital punishment and would have, "to wait until I got to the circumstances to find out if the Lord would direct me to pass judgment on someone." She opposed the death penalty on religious, philosophical and moral grounds. She said she would consider imposing the death penalty "only if the Holy Spirit directed me to go that direction." Ms. McClain's answers clearly show that she was both unwilling and unable to follow the law as instructed by the trial judge and would only follow the dictates of the Holy Spirit, according to her own reading thereof. Thus she could not perform her duty as a juror under the requirements of *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

■ Defendant says the trial judge was in error in granting the State's motion in limine prohibiting defendant from producing any evidence of an alleged assault by the victim, Richmond, upon one Larry Sanders. There is nothing in this record to show that Larry Sanders was involved in the murder of Richmond nor that Chambers or defendant knew of any assault on Larry Sanders by Richmond. The State's position was that the evidence was immaterial or irrelevant to the issues in the murder case.

Willie Simpson had given a statement to the police in which he mentioned that, "Larry was coming up the street and Darrell seen him," and "Darrell picked the rifle up and fired a shot at Larry." Counsel for defendant thought that Larry was defendant, Darrell Taylor, as apparently he was also called Larry. In spite of the trial judge's pretrial ruling prohibiting any reference to that alleged episode, defendant attempted to elicit from the witness Willie Simpson, the substance of his statement to the police that Darrell took a shot at Larry with a rifle, and complains in this Court because the trial judge again refused to admit that evidence.

Defendant's assertion in support of this alleged error follows: "Evidence of previous threats by victim and acts of hostility by victim as well as his character and facts and circumstances immediately preceding the assault should be admitted. *Ellis v. State*, 555 S.W.2d 731 (Tenn.Cr.App.1977)." Ellis was charged with an assault upon Witt, he raised the issue of self-defense, and sought to introduce evidence that Witt had threatened to kill him prior to the assault. In overruling the trial judge's rejection of the death threat, the Court of Criminal Appeals held that having raised the issue of self-defense Ellis was entitled to show prior communicated threats made by the victim, being relevant to the jury's determination whether of not the accused was acting under a reasonable fear of his own life. The issue of self-defense was not raised in this case. There is no merit whatever to defendant's claim that the subject evidence has relevance in this case.

■ Defendant contends that the imposition of the death penalty in this case was arbitrary, capricious and disproportionate.

The jury found that this murder was (1) committed during the perpetration of a robbery; and (2) that defendant had been previously convicted of a felony involving the use of threats or violence and that there were no mitigating circumstances to outweigh those statutory aggravating circumstances.

This Court has upheld the death penalty in numerous felony murders committed under similar circumstances. *See State v. Sparks*, 727 S.W.2d 480 (Tenn.1987); *State v. Goad*, 707 S.W.2d 846 (Tenn.1986); *State v. Smith*, 695 S.W.2d 954 (Tenn.1985); and *State v. Coleman*, 619 S.W.2d 112 (Tenn. 1981).

Contrary to defendant's contention, the Eighth Amendment to the United States Constitution does not bar the death penalty for an aider and abettor where the proof shows that that person intended that a killing take place or was a major partici-

pant in the underlying felony and had a mental state of reckless indifference to human life. *See Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Defendant's actions before, during and immediately after the murder cast him in the role of a major participant with an affirmative intention to terminate a human life.

The sentence of death is affirmed and will be carried out as provided by law on the _____ day of _____, 1989, unless stayed by proper authority. Costs are adjudged against defendant.

DROWOTA, C.J., and COOPER, HARBISON and O'BRIEN, JJ., concur.