IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 10, 2006 Session

## STATE OF TENNESSEE v. ANDREW L. COLLINS and TERRANCE D. GRIZZARD

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-A-872     Mark J. Fishburn, Judge**

———————

**No. M2005-01685-CCA-R3-CD - Filed August 15, 2006**

———————

The defendants, Andrew L. Collins and Terrance D. Grizzard, were each convicted of one count of aggravated assault. In addition, the defendant Collins pled guilty to one count of domestic assault and the defendant Grizzard was convicted of one count of reckless endangerment. Collins received an effective sentence of six years and Grizzard received an effective sentence of eight years. In this appeal, the defendant Collins asserts (1) that the evidence was insufficient to support his conviction for aggravated assault and (2) that the trial court erred by providing a jury instruction on criminal responsibility. The defendant Grizzard asserts (1) that the evidence was insufficient to support his convictions and (2) that his sentence is illegal. Because the evidence was insufficient to support the defendant Collins's conviction for aggravated assault, that conviction must be reversed and dismissed. Further, because the record establishes that there are clerical errors on the judgment forms relating to the defendant Grizzard, the cause must be remanded to the trial court for entry of corrected judgments. Otherwise, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed in Part; Reversed and Dismissed in Part; Remanded**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

James P. McNamara (on appeal) and Matthew Robnett (at trial), Assistant Public Defenders, for the appellant, Andrew L. Collins.

Charles E. Walker, Nashville, Tennessee, for the appellant, Terrance D. Grizzard.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sarah Davis and Deborah Housel, Assistant District Attorneys General, for the appellee, the State of Tennessee.

**OPINION**

On December 19, 2003, the two defendants entered a residence shared by Shareka Harris, her three minor children, and her thirteen-year-old sister, Jarvetta. The defendant Grizzard pointed a gun at Shareka Harris. Meanwhile, Jarvetta Harris took the other children who were present into a bedroom. Grizzard fired a single gunshot into the floor. Collins, who was in possession of a black handgun and apparently in another area at the time of the shooting, and Grizzard left the residence together.

At trial, Shareka Harris testified that on the date of the offenses, she was at her residence with two of her friends, her sister, and her three minor children when the defendants entered through an unlocked back door. She stated that Collins, with whom she had a previous romantic relationship, walked to another room to play with her children while Grizzard remained in the living area. According to Ms. Harris, Grizzard pointed a "medium-sized" silver-colored handgun at her and asked, "Bitch, where is it at?" She recalled that "then the next thing you know, the gun went off," striking the floor. Ms. Harris testified that her three-year-old daughter, Shatoria, was sitting on her lap during the encounter. She described herself as fearful during the ordeal because she "didn't know what was going on" and could not recall if Collins was in the living area when the gun was fired. According to Ms. Harris, she noticed that Collins was carrying a black handgun as the two men left her residence. It was her belief that Grizzard did not intend to fire the gun and that it "went off" by accident. She testified that after the defendants left, she checked on her other children and then telephoned the police.

Ms. Harris testified that she telephoned Collins's attorney after the preliminary hearing because she wanted to "help [Collins] out of trouble, help him get out of it." She acknowledged that she had informed an investigator for the defense that Collins "didn't do nothing." She admitted, however, that Collins had a gun in his hand on the night of the offenses. Ms. Harris conceded that she had informed Grizzard's girlfriend, Robin Griffin, that she was not going to testify at trial.

Thirteen-year-old Jarvetta Harris testified that on the evening that the gun was fired, she was to babysit her sister's children and the children of her sister's friend while the adults had a social outing. She recalled that Collins, who had dated her sister, and Grizzard, whom she knew from the neighborhood, entered through the back door. She stated that when she saw a gun in Grizzard's hand, she pushed four of the children into the back room, locked the door, and, a few minutes later, heard a single gunshot. Jarvetta Harris testified that she was frightened and did not leave the back room until her sister came in several minutes later.

Officer Keith Holley of the Metro Police Department, who responded to the call placed by Ms. Harris, testified that Ms. Harris, Jarvetta Harris, and several children were in the residence and that they were all "very agitated, very upset" when he arrived. Officer Holley observed a bullet hole in the floor as well as a "mark on the wall that could have been a ricochet mark." According to the officer, Ms. Harris had claimed that both defendants were armed.

Officer Lewis Holloway, who was called to relieve Officer Holley when his shift ended, testified that he discovered a bullet fragment on the floor. He stated that the victims appeared to be frightened at the time of the investigation.

Domestic Violence Division Officer Philip Williams, who interviewed Shareka Harris, testified she was "shaking" and "scared" at the time. Officer Williams recalled that Ms. Harris had informed him that Collins was armed when he left the residence.

## I

The defendants first assert that the evidence was insufficient to support their convictions. Grizzard contends that the evidence was insufficient to support his conviction for aggravated assault because the state failed to establish that Shareka Harris feared imminent bodily injury. He asserts that the evidence was insufficient to support his conviction for felony reckless endangerment because there was no proof that any of the victims were placed in a reasonable probability of danger. Collins contends that the evidence was insufficient to support his conviction for aggravated assault because there was insufficient proof that he was criminally responsible for Grizzard's conduct.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Because a verdict of guilty removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Each defendant was convicted of the aggravated assault of Shareka Harris. An assault occurs where, among other things, a person "intentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2) (2003). An assault becomes aggravated when the victim is seriously injured or when the defendant "uses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(A)-(B) (2003).

As to the defendant Grizzard, the evidence established that he entered the residence of Shareka Harris through an unlocked back door. Both Shareka and Jarvetta Harris testified that Grizzard was armed. There was testimony that Grizzard pointed a silver handgun at Ms. Harris and asked, "Bitch, where is it at?" It is uncontroverted that the gun discharged, striking the floor.

Naturally, Ms. Harris was frightened by the encounter. Under these circumstances, it is our view that the evidence was sufficient to support Grizzard's conviction for aggravated assault.

The defendant Collins was convicted of aggravated assault under a theory of criminal responsibility. "A person is criminally responsible for an offense committed by the conduct of another if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." Tenn. Code Ann. § 39-11-402(2) (2003). In State v. Maxey, this court ruled that "[i]t is necessary that the defendant 'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). This court also concluded that "[t]he defendant must 'knowingly, voluntarily and with common intent unite with the principal offenders in the commission of the crime.'" Id. (quoting State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)). Even under the theory of criminal responsibility for the acts of another, mere presence during the commission of the crime is not enough to convict. See Flippen v. State, 365 S.W.2d 895, 899 (Tenn. 1963); Anglin v. State, 553 S.W.2d 616, 619 (Tenn. Crim. App. 1977). Presence and companionship with the perpetrator of a felony before and after the commission of the offense are circumstances from which one's participation in the crime may be inferred. State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown. It is not necessary for one to take a physical part in the crime; mere encouragement of the principal is sufficient. State v. McBee, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982).

Here, the proof established that Collins and Grizzard entered the Harris residence at the same time. The only testimony is that Grizzard went into the living room while Collins went into a separate area in order to play with Shareka Harris's children. After Grizzard discharged his weapon, he and Collins hurriedly left through the back door. According to the proof at trial, it was at that point that Ms. Harris first observed that Collins was armed. The state asserts that the jury could have inferred that Collins and Grizzard were acting in concert to terrorize Shareka Harris because of the break-up of her relationship with Collins. Perhaps because Ms. Harris was a somewhat reluctant witness, especially as to the defendant Collins, the state produced no proof to support such an inference. Furthermore, while Shareka Harris testified that her relationship with Collins had ended "around" the time of the offense, there was no proof as to whether she had ended the relationship or whether the circumstances were less than amicable. The only proof linking Grizzard and Collins was the fact that they arrived at and left the residence together. Again, the only testimony was that Collins was not in the room when the shot was fired. The state was unable to produce evidence of his participation in a plan or a scheme. Under our law, proof of mere presence is not enough. See Flippen, 365 S.W.2d at 899; Anglin, 553 S.W.2d at 619. It is our view, therefore, that the evidence was insufficient to support Collins's conviction for aggravated assault. See Ball, 973 S.W.2d at 293-294 (holding that the fact that the defendants arrived and left the scene at the same time was insufficient to establish that the defendant was criminally responsible for the conduct of his co-defendant).

The defendant Grizzard asserts that the evidence was insufficient to support his conviction for felony reckless endangerment. Reckless endangerment occurs when a person "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a) (2003). When committed with a deadly weapon, reckless endangerment is a Class E felony. Tenn. Code Ann. § 39-13-103(b).

In this case, the proof at trial established that Grizzard entered the residence of Shareka Harris and then brandished and discharged a handgun. Shareka Harris testified that her thirteen-year-old sister and her three minor children were present when Grizzard displayed the weapon. Jarvetta Harris saw Grizzard in possession of the gun. Shareka Harris testified that her three-year-old daughter, Shatoria, was sitting on her lap when Grizzard pointed the gun at her and then discharged the weapon into the floor. In our view, this evidence was sufficient to support Grizzard's separate conviction for felony reckless endangerment.

II

The defendant Collins asserts that the trial court erred by providing a jury instruction on criminal responsibility. He contends that the issue was not fairly raised by the proof at trial. The state submits that the charge was proper.

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury. U.S. Const. amend VI; Tenn. Const. art. 1, § 6; see State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991); Willard v. State, 130 S.W.2d 99 (Tenn. 1939). This right encompasses the defendant's right to a correct and complete charge of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). In consequence, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see State v. Forbes, 918 S.W.2d 431, 447 (Tenn. 1990); see also Tenn. R. Crim. P. 30.

Generally, the trial court is required to instruct the jury on the rules of law that apply to the issues at trial. Poe v. State, 370 S.W.2d 488, 489 (Tenn. 1963). The duty to charge the jury arises when an issue is fairly raised by the evidence. State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995); State v. McPherson, 882 S.W.2d 365, 374 (Tenn. Crim. App. 1994). This court has held that "it is well-settled that an accused is entitled to an affirmative instruction on every issue fairly raised by the evidence." State v. Leaphart, 673 S.W.2d 870, 873 (Tenn. Crim. App. 1983) (citing Lester v. State, 370 S.W.2d 405 (Tenn. 1963); Hicks v. State, 533 S.W.2d 330 (Tenn. Crim. App. 1975)).

The trial court instructed the jury as follows:

> Criminal Responsibility for Conduct of Another: A defendant is criminally responsible as a party to the offense of aggravated assault or any lesser included offense of aggravated assault except facilitation offenses, if the offense was committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible, or by both. Each party to the offense may be charged with the commission of the offense.

A defendant is criminally responsible for an offense committed by the conduct of another if acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense.

The trial court overruled Collins's objection to the instruction on criminal responsibility, concluding that "there's evidence from which a jury could reasonably infer that" the crime occurred. There was proof that Collins and Grizzard arrived at and left the Harris residence together. See Ball, 973 S.W.2d at 293-94. Although Collins and Ms. Harris had recently terminated their relationship, there was no evidence of acrimony or proof that retribution was the motivation for the crime. As stated, mere presence was not enough to support the conviction. See Flippen, 365 S.W.2d at 899; Anglin, 553 S.W.2d at 619. In our view, Collins would have been entitled to a judgment of acquittal at the conclusion of the state's proof. See Tenn. R. Crim. P. 29(a); see also Ball, 973 S.W.2d at 293-294. Thus, the trial court erred by providing a jury instruction on criminal responsibility. Moreover, because the trial court had ruled at the conclusion of the state's proof that the evidence was insufficient to support a finding that the defendant committed the offense by his own conduct, the error cannot be classified as harmless. See State v. Farner, 66 S.W.3d 188, 206 (Tenn. 2001). In consequence, Collins's conviction for aggravated assault must be reversed and dismissed.

III

Finally, the defendant Grizzard asserts that his sentence for felony reckless endangerment is illegal. He contends that his Range II, eight-year sentence is outside the applicable range. The state submits that the trial court actually imposed a sentence of three years for the felony reckless endangerment conviction and eight years for the aggravated assault conviction and mistakenly transposed those sentences on the judgment forms.

It is well-settled that "'a judgment imposed by a trial court in direct contravention of express statutory provisions regarding sentencing is illegal and is subject to being set aside at any time, even if it has become final.'" McConnell v. State, 12 S.W.3d 795, 798 (Tenn. 2000) (quoting State v. Mahler, 735 S.W.2d 226, 227-28 (Tenn. 1987)). A trial judge has both the power and authority to correct the sentencing judgment "as soon as the illegality [is] brought to his attention." State v. Burkhart, 566 S.W.2d 871, 873 (Tenn. 1978).

In this case, the judgment forms indicate that Grizzard was sentenced as a Range II offender to three years for aggravated assault and eight years for felony reckless endangerment. Each of these sentences is outside the applicable sentencing range. See Tenn. Code Ann. § 40-35-112(b)(3), (5) (2003). The transcript of the sentencing hearing, however, establishes that the trial court sentenced Grizzard to eight years for aggravated assault and three years for felony reckless endangerment. Where there is a conflict between the judgment of conviction and the transcript of the proceedings, the transcript controls. See, e.g., State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985). Under these circumstances, the errors in the judgment forms qualify as clerical errors. In consequence, the cause must be remanded for entry of corrected judgments reflecting the sentences actually imposed.

Accordingly, because the evidence is insufficient to support Collins's conviction for aggravated assault, that conviction must be reversed and dismissed. Because the record establishes that there are clerical errors on Grizzard's judgment forms, the cause must be remanded for entry of corrected judgment forms. Otherwise, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE