IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 24, 2003 Session

## STATE OF TENNESSEE v. GUADALUPE STEVEN MENDEZ

**Direct Appeal from the Criminal Court for Cumberland County**
**No. 6141A      Lillie Ann Sells, Judge**

_____

**No. E2002-01826-CCA-R3-CD**
**September 12, 2003**
_____

The Defendant, Guadalupe Steven Mendez, was convicted by a jury of aggravated rape and especially aggravated sexual exploitation of a minor. The trial court sentenced the Defendant to terms of twenty-four years for the aggravated rape and ten years for the sexual exploitation. These sentences were ordered to be served concurrently to each other but consecutively to a prior sentence. In this direct appeal, the Defendant challenges the sufficiency of the evidence in support of the aggravated rape conviction, and further complains that his sentence is excessive. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Merrilyn Feirman, Nashville, Tennessee, and Joe Finley, Cookeville, Tennessee, for the appellant, Guadalupe Steven Mendez.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Bill Gibson, District Attorney General; and Anthony Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The facts of this case are not in dispute. Fifty-five-year-old Patricia Morgan had a fourteen-year-old granddaughter, K.W.[1] K.W. frequently spent the weekend with her grandmother at her uncle's house. Ms. Morgan developed a "pen pal" relationship with the Defendant, an inmate in the Department of Correction, in early 2000. Shortly thereafter, she began visiting the Defendant and speaking frequently with him over the telephone. When K.W. spent the weekend with Ms. Morgan, K.W. would also speak to the Defendant over the phone.

---

[1]It is the policy of this Court to identify minor victims of sex crimes by their initials.

Ms. Morgan soon fancied herself in love with the Defendant. The Defendant and Ms. Morgan spoke of marriage. K.W. testified that the Defendant told her they were all going to take a road-trip together, during which the Defendant would "have" K.W. on certain days of the week, and "have" Ms. Morgan on the other days of the week. The Defendant also told K.W. that he knew people in New York who could set her up in the modeling industry and she could make $250,000 a month by being a model.

The Defendant requested Ms. Morgan to take photographs of K.W. and send them to him. On December 2, 2000, the threesome engaged in a photo-shoot, with the Defendant, from prison, giving instructions to both Ms. Morgan and K.W. over the phone. This phone conversation was recorded and the audiotape was played for the jury. This tape and the testimony at trial established that the Defendant told Ms. Morgan to take photographs of K.W. in the nude. Ms. Morgan did so. The Defendant also told K.W. to put her own finger into her vagina; K.W. complied. Ms. Morgan, at the Defendant's request, took a photograph of this "pose" by K.W. Later, the Defendant told Ms. Morgan to put her finger in K.W.'s vagina. Ms. Morgan did so.

Ms. Morgan had the photographs developed and sent them to the Defendant. The photographs were confiscated by correctional officers, and this prosecution followed.

The Defendant first contends that the proof is not sufficient to support his conviction of aggravated rape. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

The crime of aggravated rape is defined, in pertinent part, as the unlawful sexual penetration of a victim by the defendant where the defendant is aided or abetted by one or more other persons and force or coercion is used to accomplish the act. See Tenn. Code Ann. § 39-13-502(a)(3)(A). Obviously, in this case the Defendant himself did not physically penetrate the victim. However, our criminal code also provides that "[a] person is criminally responsible for an offense committed by the conduct of another if . . . [,][a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." See id. § 39-11-402(2). Here, the State argued that Ms. Morgan committed the actual sexual penetration of K.W., using force or coercion, and did so with the aid of the Defendant, who is thereby criminally responsible for Ms. Morgan's actual conduct in inserting her finger into K.W.'s vagina.

There is no dispute that Ms. Morgan sexually penetrated K.W. The Defendant argues, however, that no force or coercion was used to accomplish the penetration. K.W. testified that her grandmother had never before taken photographs like that of her, and had never before touched her like that .[2] She denied having wanted to engage in this behavior, but did so because her grandmother told her it was "okay." She did not protest at the time. There is no proof in the record that any "force" was used in Ms. Morgan's penetration of the victim; rather, the State insists that the victim was penetrated through the use of coercion.

As used in the aggravated rape statute, "coercion" is defined as the "threat of kidnapping, extortion, force or violence to be performed immediately or in the future or the use of parental, custodial, or official authority over a child less than fifteen (15) years of age." See id. § 39-13-501(1). Given the facts of this case, we must determine whether Ms. Morgan used her custodial authority over K.W. in accomplishing the sexual penetration.

"Custodial authority" is not defined in our criminal code. We can, however, look to other legislative provisions for guidance. Our juvenile code defines "custodian" as "a person, other than a parent or legal guardian, who stands in loco parentis to the child." Id. § 37-1-102(b)(7). The same statute defines "custody" as "the control of actual physical care of the child and includes the right and responsibility to provide for the physical, mental, moral and emotional well-being of the child." Id. § 37-1-102(b)(8). The victim testified that she spent as many weekends as she could with her grandmother at her uncle's house. Apparently, Ms. Morgan lived at that residence, because she referred to the location where the photographs were taken as "my bedroom." That is also the residence at which the Defendant telephoned Ms. Morgan. Ms. Morgan was the victim's natural grandparent, the mother of the victim's mother. Obviously, the victim's parent(s) entrusted the care and custody of their daughter to the grandmother on frequent occasions. We think this proof is sufficient to establish that Ms. Morgan was standing in loco parentis to the victim on the date in question.

---

[2]Ms. Morgan had previously taken photographs of the victim while the victim was wearing a bathing suit, which she sent to the Defendant.

The victim also testified that she did not protest the photographs or her grandmother's actions because her grandmother said it was "okay." That is, Ms. Morgan was using her custodial authority to convince the victim to participate in, or at least not actively resist, the sexual penetration. Accordingly, Ms. Morgan's actions, at the Defendant's behest, satisfy the definition of coercion, through the use of custodial authority, necessary to support the offense of aggravated rape.

The aggravated rape statute, as applicable here, also includes as an element of the offense the requirement that, in sexually penetrating the victim, Ms. Morgan was "aided or abetted by one (1) or more other persons." Id. § 39-13-502(a)(3). An aider and abettor is one who advises, counsels, procures, or encourages the principal to commit the offense. See State v. Carson, 950 S.W.2d 951, 954 (Tenn. 1997) (citing Flippen v. State, 211 Tenn. 507, 365 S.W.2d 895 (1963)). To hold aider and abettor status, the accused must also be present at the scene of the crime. See id. However, this requirement is satisfied if the accused was "constructively" present. See id. According to our supreme court, constructive presence

> does not require a strict, actual, immediate presence, such a presence as would make him an eye or ear witness of what occurs, for if the abettor, at the time of the commission of the crime, were assenting to it, and in a situation where he might render some aid to the perpetrator, ready to give it if necessary, according to an appointment or agreement with him for that purpose, he would, in the judgment of the law, be present and aiding in the commission of the crime . . . .

Id. (quoting Cavert v. State, 158 Tenn. 531, 14 S.W.2d 735, 738 (1929)).

The Defendant argues that he was not even constructively present, because he was not in a position to render aid to Ms. Morgan in the commission of the crime. We disagree. The Defendant was on the telephone with both Ms. Morgan and the victim during the commission of the crime. Ms. Morgan testified that the Defendant told her "to stick my finger in her." When she told him she did not want to do so, "he told me to stick my damn fingers in there." Ms. Morgan testified that she would not have committed these actions had the Defendant not "talked [her] into it." Thus, the Defendant not only encouraged Ms. Morgan to unlawfully sexually penetrate the victim, he demanded she do so when she hesitated. He was not physically present, but he certainly made his presence felt at the crime scene. In our view, the Defendant did render aid to Ms. Morgan during the commission of the aggravated rape, and the requirement that he aided and abetted her is accordingly satisfied. The evidence being sufficient to support the Defendant's conviction of aggravated rape, this issue is without merit.

The Defendant also complains that the trial court imposed an excessive sentence. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon

the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The trial court sentenced the Defendant to a term of twenty-four years of incarceration for the aggravated rape conviction. Aggravated rape is a Class A felony. See Tenn. Code Ann. § 39-13-502(b). The Defendant was sentenced as a Range I offender. The range of sentence for a Range I offender convicted of a Class A felony is fifteen to twenty-five years. See id. § 40-35-112(a)(1). The presumptive sentence for a Class A felony is midpoint in the range, here, twenty years. See id. § 40-35-210(c). The presumptive sentence is subject to being increased by the application of appropriate enhancement factors, and decreased by the application of appropriate mitigating factors. See id. § 40-35-210(e). In this case, the trial court applied three enhancement factors: that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; that the offense involved a victim and was committed to gratify the Defendant's desire for pleasure or excitement; and that the felony was committed while the Defendant was incarcerated for a felony conviction. See id. § 40-35-114(2), (8), (15) (Supp. 2002). The trial court applied no mitigating factors. On the basis of its findings, the trial court increased the Defendant's sentence four years from the midpoint, to twenty-four years.

The Defendant does not challenge the trial court's application of the enhancement factors. Rather, the Defendant contends that the trial court should have applied as a mitigating factor that the aggravated rape neither caused nor threatened serious bodily injury. See id. § 40-35-113(1). However, even accepting the Defendant's argument at face value, we cannot conclude that the trial court erred in its imposition of a twenty-four year sentence. The weight of the single mitigating factor would be minimal, at best, and would not entitle the Defendant to a reduction in his sentence, which was enhanced by the application of three enhancement factors. This issue is without merit.

The Defendant was also convicted of especially aggravated sexual exploitation of a minor. See id. § 39-17-1005(a). This offense is a Class B felony, see id. § 39-17-1005(c), subjecting the Defendant to a sentence range of eight to twelve years, see id. § 40-35-112(a)(2). The presumptive sentence for a Class B felony is the minimum in the range, increased by applicable enhancement factors and decreased by applicable mitigating factors. See id. § 40-35-210(c),(e). As to this offense, the trial court sentenced the Defendant to ten years on the basis of the same three enhancement factors and no mitigating factors. Again, we find no error in the ten-year sentence imposed.

The Defendant's sentences for the instant crimes were ordered to run concurrently with each other. However, they were ordered to run consecutively to the life sentence that the Defendant is currently serving for first degree murder. The Defendant contends that the trial court erred in this regard. We disagree.

The trial court ordered consecutive sentencing on the basis that the Defendant had been convicted of two statutory offenses involving sexual abuse of a minor. See id. § 40-35-115(b)(5). Consecutive sentencing on this basis requires "consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims." Id. With regard to these circumstances, the trial court found as follows:

> considering the evidence, the nature and scope of this sexual act, the relationship between the defendant and the victim and the fact that he used this women[sic], this little granddaughter of hers, fourteen years of age and these terrible facts and circumstances which I heard and the jury heard in the evidence of this case, the court believes that due to the circumstances of this case, the evidence presented in this case, that these are aggravated circumstances and therefore this sentence should run consecutive to the time that he's now serving.

While the trial court's explanation of how the facts of this case fit the aggravating circumstances matrix could have been more comprehensive, we are satisfied that the trial court's conclusion is supported by the evidence. The Defendant's relationship with the victim was established through the victim's grandmother. The relationship was entirely inappropriate, but the victim trusted her grandmother, which trust the Defendant took full advantage of. The time span of the activity was relatively brief, but only because prison officials found the incriminating photographs. The nature and scope of the sexual acts involved incest. See id. § 39-15-302(a)(1). The extent of the damage to the victim was demonstrated by the victim impact statement submitted by the victim's mother, which stated that the family had been destroyed and both the victim and the victim's mother required counseling. These circumstances are sufficiently aggravating, we find, to support the imposition of consecutive sentences on this basis.

We note that, in this case, the trial court ordered the sentences for the instant offenses to run concurrently to one another, but consecutively to the Defendant's prior sentence. Upon initial consideration, the ground relied upon by the trial court for the imposition of consecutive sentences appears to apply only to the sentences for the offenses involving sexual abuse of a minor. See id. § 40-35-115(b)(5). However, this Court has previously held that, so long as there is a statutory basis for the imposition of consecutive sentences, "consecutive sentences may be imposed any time the defendant is convicted of more than one criminal offense; the offenses do not necessarily have to arise from the same proceeding." State v. Moore, 942 S.W.2d 570, 572 (Tenn. Crim. App. 1996). Thus, a sentence imposed for a crime committed years after an unrelated crime, for which the defendant is still incarcerated, may be ordered served consecutively to the prior sentence. See id. Indeed, our Rules of Criminal Procedure provide:

> If the defendant has additional sentences not yet fully served as the result of convictions in the same court or in other courts of this state and if this fact is made known to the court prior to sentencing, the court shall recite this in the judgment setting sentence, and the sentence imposed shall be deemed to be concurrent with the prior sentence or sentences, unless it affirmatively appears that the new sentence being imposed is to be served consecutively with the prior sentence or sentences. The judgment to make the sentences consecutive or concurrent shall explicitly recite the judge's reasons therefore, and is reviewable on appeal.

Tenn. R. Crim. P. 32(c)(2). Here, the trial court determined that there was a statutory basis for the imposition of consecutive sentences, and the record supports that determination. Which of the sentences the trial judge then decided to "stack" was within the trial court's discretion. Certainly, had the trial court determined the Defendant to be a "professional criminal," see Tenn. Code Ann. § 40-35-115(b)(1), the trial court would have had the authority to run the current sentences consecutively to the Defendant's prior sentence, even if it ran the current sentences concurrently to each other. We see no basis for arriving at a different conclusion simply because the trial court relied upon the criterion for sexual abuses of a minor in determining that the Defendant was eligible for consecutive sentences.

Of course, the imposition of consecutive sentences under this provision also requires findings that the length of the sentence is justly deserved in relation to the seriousness of the offense, and that it is no greater than that deserved for the offense committed. See State v. Lane, 3 S.W.3d 456, 460 (Tenn. 1999). The trial court made these findings, albeit not in the precise words, and the record supports these findings. We deem proper the trial court's order that the Defendant's sentences for these crimes to be served consecutively to his prior sentence. This issue is therefore without merit.

The judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE