IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 15, 2004

# STATE OF TENNESSEE v. LYLE VAN ULZEN AND BILLY J. COFFELT

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-A-583      J. Randall Wyatt, Jr., Judge**

---

**No. M2003-02066-CCA-R3-CD - Filed April 29, 2005**

---

The defendants, inmates at Riverbend Penitentiary, successfully temporarily escaped from custody while being transported to a court appearance. At trial, Defendant Van Ulzen was convicted of two counts of aggravated robbery (Class B felony), two counts of aggravated assault (Class C felony), four counts of false imprisonment (misdemeanor), one count of theft (misdemeanor), and pled guilty to one count of felony escape (Class E felony). Defendant Coffelt was convicted of one count of aggravated assault (Class C felony), three counts of theft (misdemeanor), four counts of false imprisonment (misdemeanor), and one count of felony escape (Class E felony). On appeal, Defendant Van Ulzen appeals his convictions and sentence. Defendant Coffelt appeals aspects of his convictions. Upon review of Defendant Van Ulzen's appeal, we reverse and dismiss one count of aggravated assault as violative of double jeopardy. All other convictions and judgments as to both defendants are affirmed. We remand for correction of judgments as to Defendant Coffelt.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part;**
**Reversed and Dismissed in Part; Remanded for Entry of Corrected Judgments**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Cynthia F. Burnes, Nashville, Tennessee, for the appellant, Lyle Van Ulzen.

Larry B. Hoover, Nashville, Tennessee, for the appellant, Billy J. Coffelt.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Kathy Morante, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Defendant Lyle Van Ulzen was convicted of two counts of aggravated assault, two counts of aggravated robbery, four counts of false imprisonment, one count of theft, and pled guilty to one count of felony escape. Defendant Van Ulzen was sentenced as a Range III offender on the two aggravated assaults and as a Range II offender on the remainder, for an effective sentence of eighty-four years. This consisted of ten years on each aggravated assault, thirty years on each aggravated robbery, and four years for escape. The five misdemeanors were set at eleven months and twenty-nine days on each, to run concurrently with the felony counts.

Defendant Billy J. Coffelt was convicted of one count of aggravated assault, three counts of theft, four counts of false imprisonment, and one count of felony escape. He received an effective sentence of approximately twenty-one years as a Range III, persistent offender. He was sentenced to ten years for aggravated assault and four years for escape. The seven misdemeanor convictions were each for eleven months and twenty-nine days, to run consecutively to the other counts.

On appeal, Defendant Van Ulzen raises six issues: 1) sufficiency of the evidence to support convictions for false imprisonment, 2) the convictions for escape and false imprisonment violate due process under <u>Anthony</u>, 3) the convictions for aggravated robbery and aggravated assault constitute double jeopardy, 4) the chain of custody was not established as to the knives and guards' clothing, 5) error in consecutive sentencing, and 6) error in application of enhancement factors during sentencing.[1]

Defendant Coffelt appeals on the following issues: 1) sufficiency of the evidence to support a conviction for aggravated assault, 2) the convictions for escape and false imprisonment violate due process under <u>Anthony</u>, and 3) the chain of custody was not established as to the knives and guards' clothing.

On September 28, 2001, the two defendants were transported from Riverbend Penitentiary to the Davidson County Courthouse. Three unarmed transportation officers, William Engel, Karen Wev, and Charles Abbott, were escorting the defendants through the tunnel area leading to the Criminal Justice Center when Defendant Van Ulzen displayed two handmade knives (shanks), each six to eight inches long. The defendants effected a release from their restraints, and the three officers were handcuffed to a railing in a room near the elevator. A fourth officer, Lyle Beckjordan, appeared on the scene and was also handcuffed to the railing with the other officers. The defendants, after donning two of the officers' clothes, made their escape. Both defendants were captured together, without incident, that afternoon.

According to Officer Engel, Defendant Van Ulzen, after displaying the shanks, stated that he did not want to hurt anyone. Defendant Van Ulzen then said that if Engel did not cooperate, someone was going to be "stuck." Engel was instructed to unlock Defendant Coffelt, which he did.

---

[1] The defendant addressed the enhancement factors in two issues which we consolidated for review.

The two defendants then freed themselves of their restraints. Corporal Wev was told to handcuff the officers to a railing. Defendant Van Ulzen took Engel's pants and jacket and put them on. Engel was then told to handcuff himself to the railing. At one point, Defendant Van Ulzen became agitated and threatened to "stick" somebody if they did not move faster. When Beckjordan got off the elevator, Defendant Van Ulzen brought him over and had him handcuff himself to the railing. Defendant Coffelt made no statements during the incident. Engel's keys were taken but were thrown to the floor. All of the other officers still had their handcuff keys, enabling them to free themselves after the defendants left the scene. Engel first estimated the time elapsed at eight to ten minutes between Defendant Van Ulzen's pulling the shanks until the officers escaped the room. In Engel's debriefing to the Tennessee Bureau of Investigation (TBI) on the date of the escape, he had estimated the incident lasted two to three minutes and, finally, on cross-examination, estimated a length of four to five minutes.

Officer Karen Wev testified that after Defendant Van Ulzen brandished the shanks, he ordered Engel to give Defendant Coffelt the handcuff keys. Defendant Coffelt then freed himself and Defendant Van Ulzen. Defendant Van Ulzen was instructing Coffelt and had him handcuff Abbott and Engel to the rail and hand Wev leg irons to handcuff herself to the rail. After the defendants put on the guard uniforms, Defendant Van Ulzen went out to summon the elevator while Defendant Coffelt stayed in the room. Officer Wev then saw Defendant Van Ulzen pushing Officer Beckjordan into the room and holding a shank at Beckjordan's side. Defendant Van Ulzen told Defendant Coffelt to handcuff Beckjordan to the railing. The defendants took Engel's and Abbott's radios and left. Wev estimated first that the entire incident lasted fifteen to twenty minutes but later said she could not be certain.

Officer Charles Abbott testified he was behind Defendant Coffelt when Defendant Van Ulzen pulled the shanks. Defendant Coffelt took Abbott by the arm and pulled him, saying, "get on up there man." Abbott shoved him back but then obeyed the orders. Abbott's and Engel's pants and jackets were taken by the defendants. Defendant Coffelt handcuffed Abbott to the rail. When Beckjordan arrived, he was brought into the room by Defendant Van Ulzen with the shank at Beckjordan's side. Abbott estimated the entire incident lasted less than three minutes. On cross-examination, he stated that Defendant Van Ulzen was "calling the shots" and that Defendant Coffelt appeared afraid to go through with the escape.

Officer Lyle Beckjordan stated that when he arrived he was met by the defendant who pushed him up against the elevator and told him not to move or he would "stick" him. He said Defendant Van Ulzen was holding a shank at Beckjordan's lower rib cage. Beckjordan was taken to the room with the other guards and handcuffed to the railing by Defendant Coffelt. Defendant Coffelt took Beckjordan's radio when the defendants left. Beckjordan estimated that the incident of his confrontation with Defendant Van Ulzen until he was free lasted approximately five minutes.

**Sufficiency**

Defendant Coffelt makes the blanket assertion that the evidence was insufficient to support any of Defendant Coffelt's convictions, but his argument is limited to the conviction for aggravated assault. We will therefore limit our review of sufficiency to the defendant's conviction for aggravated assault on Corporal William Engel.

When reviewing the trial court's judgment, this Court will not disturb a verdict of guilt unless the facts of the record and inferences which may be drawn from it are insufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Tenn. R. App. P. 13(e); State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). In other words, this Court will not reevaluate or reweigh the evidence brought out at trial. It is presumed that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Count one of the indictment charged that the defendants were guilty of aggravated assault by the use or display of a deadly weapon, causing the victim, William Engel, to fear imminent bodily injury in violation of Tennessee Code Annotated section 39-13-102.

Defendant Coffelt correctly points out that during this entire incident, he never possessed the homemade knives used to threaten the victim. The record also reflects that Defendant Coffelt never spoke to Engel during this incident. The State contends that the evidence supports Defendant Coffelt's conviction for aggravated assault under the law of criminal responsibility. Tennessee Code Annotated section 39-11-402(2) creates criminal responsibility for an offense committed by another person when:

> [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . .

Criminal responsibility is a means by which the prosecution may prove a defendant's guilt of the alleged offense based upon the conduct of another person. State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). The Sentencing Commission Comments to Tennessee Code Annotated section 39-11-402(2) provides that it encompasses the conduct of defendants formerly known as accessories before the fact and aiders and abettors.

The mere presence at the scene of a crime is insufficient to support a conviction. See Flippen v. State, 211 Tenn. 507, 365 S.W.2d 895, 899 (Tenn. 1963); Anglin v. State, 553 S.W.2d 616, 619 (Tenn. Crim. App. 1977). Presence and companionship with the perpetrator of a felony before and after the commission of the crime are circumstances from which an individual's participation may

be inferred. See State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have taken a physical part in the crime. See id. To establish criminal responsibility for another's actions, the defendant must "in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal attempt of the principal in the first degree." State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). The accused must "knowingly, voluntarily and with common intent unite with the principal offenders in the commission of the crime." State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988), perm. to appeal denied (Tenn. 1988).

In his aggravated assault against Officer Engel and his subsequent threats to "stick" anyone not cooperating, Defendant Van Ulzen's use of the handmade knives made it possible for the defendants to overcome the unarmed guards and make an escape. At the time of Defendant Van Ulzen's assault, Defendant Coffelt pulled Officer Abbott forward toward Defendant Van Ulzen's location. Defendant Coffelt then took part in handcuffing the officers, taking clothing and a radio, and escaping from custody. The jury was instructed on the law of criminal responsibility and returned a conviction for aggravated assault. It is clear that Defendant Coffelt benefitted from the aggravated assault and was a willing participant in its intended result, to effect an escape. There was sufficient evidence to show that Defendant Coffelt's conduct displayed a knowing and voluntary intent to unite with Defendant Van Ulzen's actions of aggravated assault on Office Engel. We affirm Defendant Coffelt's conviction for aggravated assault.

We next will consider Defendant Van Ulzen's challenge to the sufficiency of the evidence to convict him for the three counts of false imprisonment. The defendant does not deny handcuffing the officers to the railing but argues that the brevity of the victim's restraint did not "substantially interfere" with their liberty.

A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty. Tenn. Code Ann. § 39-13-302(a).

In this case, the officers were handcuffed to a railing and then locked in the room. The officers' radios were taken to deprive them of communication. The period of restraint was admittedly brief in that the officers retained their keys for the handcuffs and were able to force open the locked door. Nevertheless, in our view, there was substantial interference in their liberty. The purpose of removal or confinement is the guiding principle to determine substantial interference, not the distance of removal or the duration of restraint. State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997). We conclude there was sufficient evidence of substantial interference of the victims' liberty and would support the convictions for false imprisonment.

## Anthony **Issues**

Both Defendant Coffelt and Defendant Van Ulzen contend that their due process rights were violated by the convictions for false imprisonment, in that the confinement was merely incidental to the underlying felony of escape.

This claim is based on State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). Therein, our supreme court addressed the propriety of a kidnapping conviction where the detention of the victim is merely incidental to the commission of another felony. Id. at 300. The court determined that it was necessary, in each case, to analyze whether the confinement, movement, or detention was significant enough, in itself, to support a conviction for kidnapping as opposed to merely being incidental to the underlying felony. Id.

This issue was addressed later in State v. Dixon, 957 S.W.2d 532 (Tenn. 1997). The court therein emphasized that "any restraint in addition to that which is necessary to consummate [the accompanying felony] may support a separate conviction for kidnapping. Id. at 535. If such additional restraint is present, "the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm."

We are guided by an earlier case involving like circumstances, a prison escape with similar issues and identical defendants to the case at hand. State v. Billy J. Coffelt and Lyle I. Van Ulzen, No. M2002-01214-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 789, *12 (Tenn. Crim. App., at Nashville, Sept. 11, 2003) . Therein, this Court observed that an escape, unlike robbery or rape, does not inherently require restraint. Therefore, separate convictions for kidnapping will pass due process scrutiny if the restraint prevented the victim from summoning help, lessened the risk of detection, or increased the risk of harm to a victim. Id.

In this case, the restraints applied to the victims, the confinement behind the locked door, the taking of the secure door key card and the radios all combined to prevent the victims from summoning help and lessened the defendants' immediate detection. Although the victims may not have been placed in greater risk of harm, it is not necessary, as the other elements are present. The criteria as set forth in Dixon, 957 S.W.2d at 535, that justify separate prosecution for false imprisonment, are present in this case. The convictions for false imprisonment are affirmed.

## **Double Jeopardy**

We next consider Defendant Van Ulzen's contention that his convictions for aggravated robbery in Count two and aggravated assault in Count one present a double jeopardy violation. Both our federal and state constitutions protect persons from being "twice put in jeopardy" for the same offense. See U.S. Const. amend. V; Tenn. Const., art. I, § 10; State v. Lewis, 958 S.W.2d 736, 738 (Tenn. 1997). The prohibition against "double jeopardy" provides protection from three evils: (1)

a second prosecution after acquittal; (2) a second prosecution after a conviction; and (3) multiple punishments for the same offense. See Lewis, 958 S.W.2d at 738.

Our supreme court in State v. Denton, 938 S.W.2d 373 (Tenn. 1996), considered double jeopardy principles and illustrated that Article I, section 10 of the Tennessee Constitution provides broader protections against double jeopardy than the federal constitution. The analysis under Denton, in order to resolve a double jeopardy punishment issue under the Tennessee Constitution, resulted in a four-point test: (1) a comparison of the statutes giving rise to the convictions under the Blockburger test; (2) an analysis of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. Id. at 381 (discussing Blockburger v. U.S., 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 237 (1973); see State v. Winningham, 958 S.W.2d 740, 743 (Tenn. 1997); State v. Hall, 947 S.W.2d 181, 183 (Tenn. Crim. App. 1997).

Under the Blockburger test, two offenses are not the "same" for double jeopardy purposes if each requires proof of an additional fact which the other does not. Blockburger, 284 U.S. at 304. A lesser included offense, one that is encompassed in total within another offense, is considered the same offense and is barred by double jeopardy. See State v. Hayes, 7 S.W.3d 52, 55-56 (Tenn. Crim. App. 1999). Aggravated assault is a lesser included offense of aggravated robbery. See State v. Franklin, 130 S.W.3d 789, 798 (Tenn. Crim. App. 2003); State v. Jason C. Carter, No. M1998-00798-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 340, at *24 (Tenn. Crim. App., at Nashville, Apr. 27, 2000).

Aggravated robbery is the intentional or knowing theft of property from the person of another by violence or by putting the person in fear, accomplished with a deadly weapon. See Tenn. Code Ann. § 39-13-402(a)(1). Aggravated assault, as charged and proven in this case, is intentionally or knowingly causing another to fear imminent bodily injury accomplished with a deadly weapon. See id. § 39-13-102(a)(1)(B). Because the offense of aggravated assault is wholly encompassed by the offense of aggravated robbery, the offenses are the "same" under Blockburger.

The Denton court stated that no single step of the four-step test is determinative but that the results of each must be weighed. Denton, 938 S.W.2d at 381. However, if the offenses examined are the "same" under Blockburger, then the federal constitutional double jeopardy protections have been violated and no further analysis is required. See Hayes, 7 S.W.3d at 55.

Nevertheless, we observe that completing the Denton four-step analysis only confirms a violation of double jeopardy under both the federal and Tennessee constitutions. Virtually the same evidence was used to prove the offense of aggravated assault in Count one and of aggravated robbery in Count two; that the defendant brandished the knives at Officer Engel and took his clothing. These actions were not discrete acts, but both were in furtherance of the defendant's purpose, to effect an escape. And finally, the purpose of both statutes is to prevent assaultive behavior with deadly weapons. The weighing and considering of these factors reinforces the conclusion that the convictions are violative of double jeopardy.

We feel this conclusion is in harmony with a guiding principle of resolving double jeopardy issues as quoted in Denton:

> "even if it be conceded that two convictions and two punishments may be had in any case upon separate counts, the practice is not approved, and, certainly it must be clear that the offenses are wholly separate and distinct. . . ."
>
> The power of election rests with the state, not the criminal, and the state should not split the transaction so as to subject the accused to cumulative sentences for the same offense or for different offenses involving the same act as a means of pyramiding punishment for two or more cognate offenses.

Denton, 938 S.W.2d at 380 (citations omitted).

Accordingly, Defendant Van Ulzen's conviction for aggravated assault in Count one is reversed and dismissed.

## Chain of Custody

In the next issue, both defendants assert that the physical evidence, consisting of the guards' clothing and the homemade knives, was improperly admitted into evidence due to the lack of a properly established chain of custody.

In order to admit physical evidence, the party offering the evidence must either introduce a witness who is able to identify the evidence or must establish an unbroken chain of custody. State v. Holbrooks, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998). Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. Id. at 701. The identity of tangible evidence need not be proven beyond all possibility of doubt, and all possibility of tampering need not be excluded. State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000). The circumstances must establish a reasonable assurance of the identity of the evidence. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). The requirement that a party establish a chain of custody before introducing such evidence is "to demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." Scott, 33 S.W.3d at 760 (citing State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)).

Each of the two officers, whose clothing items were taken, identified their clothing items, and the respective items were marked for identification. Later, Jason Woodall, an investigator for the Tennessee Department of Correction, testified as to receiving and sealing these items in their respective bags. At this point, the exhibits were introduced into evidence without a contemporaneous objection.

Officer Engel was shown the handmade knives and testified they resembled those used in the escape. Jason Woodall later testified that he received the knives from an unidentified officer who

was involved in the capture of the defendants. Woodall had delivered the knives to the TBI lab for testing and later retrieved them.

Counsel for Defendant Coffelt made no objection to the introduction of any of these items into evidence. Defendant Coffelt's counsel did cross-examine Woodall concerning chain of custody. At the close of the State's proof, Defendant Coffelt's counsel made a motion to exclude the officers' jackets based on an inadequate chain of custody. No objection was ever raised as to the introduction of the knives into evidence. Furthermore, counsel for Defendant Van Ulzen made no objection to either the clothing or knives being introduced.

A trial court is not obligated to exclude evidence or to provide a limiting instruction in the absence of a timely objection, and a party may consent to inadmissible evidence so long as the proceedings are not rendered so fundamentally unfair as to violate due process. State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). This precedent is also reflected in Tennessee Rule of Evidence 103(a)(1), which requires a timely objection to preserve error, and in Tennessee Rule of Appellate Procedure 36(a), which requires a party to take action to prevent an error or mitigate harm.

In this case, the two officers identified their respective clothing taken from them by the defendants. This was sufficient for admissibility. See Holbrooks, 983 S.W.2d at 700. Cumulatively, the chain of custody was also established. Officer Engel testified that the two knives resembled those used by Defendant Van Ulzen. Further testimony from Jason Woodall revealed that he received the knives from an unidentified officer at the scene of the defendants' capture. The knives remained in his custody except for a period of analysis at the TBI lab. Reasonable assurance, rather than absolute assurance, of identification is the standard for admissibility of tangible objects. State v. Kilpatrick, 52 S.W.3d 81, 86 (Tenn. Crim. App. 2000). Furthermore, the lack of a timely objection waived any issue of admissibility concerning these items. We conclude that the trial court did not abuse its discretion in admitting these items.

## Consecutive Sentences

Defendant Van Ulzen contends that the trial court erred in imposing consecutive sentences. The defendant alleges that the trial court made no specific finding of fact and, therefore, avers that the record does not contain facts supporting the findings and conclusions of the trial judge.

The trial court imposed consecutive sentences on the basis that the defendant possessed a record of extensive criminal activity. The trial court stated, "Everyone [sic] of these sentences are running consecutive. And the reason the court is doing that is because of the fact that I believe both of these men are offenders whose criminal activity is extensive." The presentence report was, along with some certified copies of past convictions, introduced at the sentencing hearing. This evidence showed Defendant Van Ulzen had been convicted previously of two counts of second degree murder, two counts of arson and misdemeanor theft, escape, three counts of aggravated kidnapping, and two counts of aggravated assault.

Defendant Van Ulzen's counsel did not contest the fact of the existence of an extensive criminal history and at sentencing, in reference to consecutive sentencing, stated, "I would agree that [Defendant Van Ulzen] has a record of criminal activity that's extensive."

A trial court may order sentences to run consecutively if the court finds proof of an enumerated factor by a preponderance of the evidence. Tenn. Code Ann. § 40-35-115. One of these factors is that "the defendant is an offender whose record of criminal activity is extensive." Id. at 40-35-115(b)(2).

The record in this cause reflects the defendant's extensive criminal history, as well as the trial court's finding of such. The defendant's consecutive sentences are affirmed.

### Enhancement Factors

Defendant Van Ulzen's last two issues allege the misapplication of enhancement factors in sentencing. We will consider the two issues jointly.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the

trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002); see Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

The trial court found the following enhancement factors from Tennessee Code Annotated section 40-35-1414 applicable:

(2)     the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(4)     the offense involved more than one victim;

(10)    the defendant possessed or employed a deadly weapon during the commission of the offense;

(11)    the defendant had no hesitation about committing a crime when the risk to human life was high; and

(17)    the crime was committed under circumstances under which the potential for bodily injury to a victim was great.

No mitigating factors were found.

However, the trial court did not distinguish which enhancement factors applied to the specific offenses, as required by Tennessee Code Annotated section 40-35-210(f). See State v. McKnight, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994). Accordingly, our review will be *de novo* without statutory presumption of correctness. State v. Ashby, 823 S.W.2d at 169.

Due to our reversal of one conviction for aggravated assault, Defendant Van Ulzen stands convicted of two counts of aggravated robbery, one count of aggravated assault, one count of escape, and five misdemeanor convictions. All misdemeanor convictions were ordered to run concurrently and are not challenged. Likewise, the defendant does not argue against the enhancement factors' applicability to the offense of escape.

The defendant contends that the use of multiple victims as enhancement is inappropriate in that the defendant was convicted separately for each victim. We agree that this factor was not applicable as to the aggravated robbery convictions. See State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987).

Finally, the defendant challenges the use of enhancement factors (10), use of a deadly weapon; (11), risk to human life; and (17) great potential for bodily injury. Tenn. Crim. App. § 40-35-114(10), (11), (17). The defendant contends that these factors are inherent to the offense of aggravated robbery. We agree that use of a deadly weapon and potential for bodily injury are inherent to the offense of aggravated robbery and would be inappropriate to use as enhancement factors. State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1998).

In regard to factor (11), risk to human life is necessarily entailed in aggravated robbery. However, it may be applied where the defendant creates a high risk to the life of a person other than the victim. State v. Reid, 91 S.W.3d 247, 312 (Tenn. 2002). There was abundant proof that other guards, not victimized by robbery, were shackled and present during the aggravated robberies. Thus, those guards were placed in high risk, and this factor would apply as to them.

Of the enhancement factors enumerated by the trial court, we are left with two: (2), previous history of criminal behavior, and (11), risk to human life. Our review indicates that one additional enhancement factor would be applicable, (15), the felony was committed on escape status or while incarcerated for a felony conviction. Tenn. Code Ann. § 40-35-114(15). With three enhancement factors present and no mitigating factors, we conclude that the maximum sentence for the remaining convictions was appropriate. See, e.g., State v. Hall, 947 S.W.2d 181, 186 (Tenn. Crim. App. 1997).

## Conclusion

Defendant Van Ulzen's conviction of aggravated assault in Count one is reversed and dismissed.

We note an error on the judgments for Defendant Coffelt on Counts four and nine. On Count four, the conviction is listed as false imprisonment. The transcript indicates the conviction was for theft. The judgment form for Defendant Coffelt on Count nine reflects a conviction offense of theft, while the transcript indicates the conviction was for false imprisonment. We remand for correction of judgments.

The trial court judgments are otherwise affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE