**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT NASHVILLE**
**FEBRUARY SESSION, 1999**

**FILED**

April 8, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | No. 01C01-9803-CR-00104 |
| Appellee | ) | |
| | ) | **DAVIDSON COUNTY** |
| vs. | ) | |
| | ) | **Hon. Seth Norman, Judge** |
| **ANDRADE BRUCE WILLIAMS, JR.,** | ) | |
| | ) | |
| | ) | **(First Degree Murder;** |
| Appellant | ) | **Attempted Especially Aggravated** |
| | ) | **Robbery)** |

For the Appellant:

**Terry J. Canady**
Attorney at Law
211 Printer's Alley Bldg.
Suite 400
Nashville, TN 37201

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Kim R. Helper**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Victor S. (Torry) Johnson III**
District Attorney General

**Kymberly Haas**
Asst. District Attorney General
Washington Sq., Suite 500
222-2nd Ave. North
Nashville, TN 37243-0493

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

**OPINION**

The appellant, Andrade Bruce Williams, Jr., was convicted by a jury in the Davidson County Criminal Court of first degree murder and attempted especially aggravated robbery. The trial court imposed a sentence of life imprisonment for the murder and ten years for the attempted robbery. The sentences were ordered to run concurrently. In his appeal as of right, the appellant raises two issues for our review: (1) admission of the appellant's statements which were allegedly obtained upon promises of leniency and (2) failure to admit evidence of the victim's reputation for violence.

Following review, we affirm the judgment of the trial court.

FACTUAL BACKGROUND

Around 9 p.m. on October 2, 1998, Tonya Wynn, a resident of 6th Avenue North in Nashville, was "sitting [on the steps of her residence] and waiting on the light company to come and cut [her] lights back on." While awaiting the utility company's arrival, she observed the appellant park a vehicle in front of her house. Ms. Wynn was familiar with the appellant because he dated her cousin, Cynthia Malone. When the appellant got out of the vehicle, he was carrying a ski mask and a gun. She described the appellant's clothing as "a black khaki shirt and some black khaki pants." The appellant walked around the corner out of her sight into a vacant lot toward the 7th Avenue Market. Immediately thereafter, Ms. Wynn heard gunfire. A few minutes later she saw the appellant return to the vehicle and leave. Ms. Wynn recorded the license plate number and furnished it to the police.

Officer John Batty of the Nashville Metro Police Department along with his

partner Officer Pat Gibson arrived at the scene to find Darel Douglas lying "semi-unconscious" in the doorway of the market. The victim told Officer Gibson that "he was near the phone booth . . . and somebody approached him and told him to give him the f------ money. When he told him he didn't have any [money], then he was shot." The victim stated to Officer Gibson that he did not recognize his assailant who was wearing a ski mask. The victim was acquainted with Officer Gibson and asked the officer to accompany him to the hospital. The victim died at 1 p.m. the following day. The autopsy report established that the victim was shot three times with bullet wounds to the abdomen, left hip and back.

The investigation developed the appellant as a suspect in the shooting. On October 3, 1998, the detective spoke with the appellant at his mother's home in Nashville. The following day, the appellant voluntarily came to the police station. At the station, he was advised of his Fifth Amendment rights which he acknowledged by signing a waiver of rights form. The appellant's first statement was recorded on audiotape and played for the jury.

In his first statement, the appellant explained that Tony Fitzgerald had robbed Darel Douglas and that he only drove the getaway car. The police searched for a Mr. Fitzgerald but could not locate anyone by that name. Through their investigation, the officers concluded that the robbery and murder involved only one assailant. The officers again spoke with the appellant on October 5, 1998, at his place of employment. The officers explained to the appellant that Tony Fitzgerald did not exist and that they wanted to conduct a further interview. The appellant admitted that Tony Fitzgerald was fictitious.

Again, on October 5, the appellant was *Mirandized* and signed a waiver of rights form. He stated that on October 2, he borrowed a vehicle from a friend and

3

went to the 7th Avenue Market. Upon this occasion, the victim was not present. However, the second time Douglas was present and the appellant admitted to holding the gun on the victim and telling him to "[s]et it [money] out." The victim threw the money down. The appellant stated that he only wanted to shoot him in the leg because he "knew" the victim carried a gun; however, his hand "jumped" and he shot the victim in the stomach. Then, he shot him three more times. The appellant related that he was scared of Douglas.

The appellant testified that one week prior to the shooting, he and Douglas had argued at a car wash. Douglas had placed a gun to his head and threatened to kill him if he returned to "Salem Town." The appellant did not report this incident to the police because he was afraid of retaliation from Douglas. Because of this incident, the appellant decided that he wanted to "scare him [Douglas] back. . . . All my plans was to do was just rob him, just scare, not to shoot or kill him . . ."

On cross examination, the appellant admitted that he began his preparations for the robbery five hours in advance by securing a vehicle, obtaining a gun, and cutting holes in the ski mask. He admitted that he shot the victim three times including once in the back. The appellant stated that he was only trying to shoot Douglas before Douglas shot him. In his statements to the police, the appellant never said that he saw a gun. However, at trial, he claimed that Douglas had a gun. No weapon was found by the police at the crime scene. The appellant admitted that after he had shot Douglas twice, Douglas began running away. The appellant then shot him in the back. "I was just getting him back for what he did to me."

After hearing all of the evidence, the jury found the appellant guilty of first degree murder and attempted especially aggravated robbery.

I.  Suppression of Statements

The appellant contends that the trial court should have suppressed his statements to law enforcement officers because they were based upon promises of leniency from the police.  Specifically, he argues that under the "totality of the circumstances" including (1) promises of leniency; (2) appellant's age; (3) lack of experience with interrogations; (4) failure to complete high school; and (5) absence of legal representation that the statements should have been suppressed.

At the suppression hearing, the court heard testimony from the appellant that he was twenty years old and had completed the eleventh grade.  He testified that he had given two statements to the police, however,  promises of leniency were made to him before the statements were recorded.  Before giving the second statement, the appellant testified that Detective Mann said he "would help me out" if I gave them a statement.  Specifically, the detective said he would get him a low bond and "help me on my time."  He testified that he would not have given the statement if the officers had not promised their assistance.  He claimed that he did not understand the waiver of rights form and signed it because of the officers' promises.

Upon cross examination, the appellant admitted that he lied in his first statement regarding the involvement of Tony Fitzgerald.  Although he signed waiver of rights forms preceding both interviews and responded affirmatively to each waiver on the taped interviews, the appellant stated that he did not understand his rights upon either occasion.

Detective Mann testified that the appellant voluntarily came to the station on both occasions.  Mann stated that the appellant never indicated that he did not understand his rights after they were read to him.  The detective stated that he never made any promises or threats to the appellant regarding bond or his sentence.  The detective only told the appellant that he would not oppose the bond

that was set by the commissioner.

At the conclusion of the hearing, the trial court recited the following findings of fact on the record:

> [I]f you take what the defendant says as being true,. . . he has a very reasonable bond [$25,000] in a homicide case.  Mr. Mann denies that he ever made any promise to that effect, so the Court must weigh the credibility.
> . . .
> I have one statement from the defendant on one day, where he tells one story; and, another statement the next day, where he tells another story.  And in that statement he, in effect, admits that he was untruthful.
>  . . .
> So, I feel that the State has, . . ., carried the burden that is required, showing that there has been no proof from which I can suppress this statement.

At an evidentiary hearing, the State has the burden of demonstrating by a preponderance of the evidence that the appellant's statements were voluntary, knowing and intelligent.  State v. Kelly, 603 S.W.2d 726, 728 (Tenn. 1980).  However, on appeal, if an appellant has been afforded an evidentiary hearing on the merits of a motion to suppress a statement given to law enforcement officials, the factual findings of the trial court have the weight of a jury verdict.  State v. Makoka, 885 S.W.2d 366, 371 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1994).  Consequently, in a suppression hearing, the trial court's ruling is presumed correct unless the evidence in the record preponderates against it.  State v. Odom, 928 S.W.2d 18, 22 (Tenn. 1996); State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994).  Under this standard, matters regarding the credibility of witnesses, the weight and value to be afforded the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial court as the trier of fact.  Odom, 928 S.W.2d at 23.  On appeal, the defendant has the burden of showing that the evidence preponderates against a finding that a confession was, in fact, knowing and voluntarily given.  State v. Nakdimen, 735 S.W.2d 799, 800 (Tenn. Crim. App. 1987); see State v. Tate, No. 02C01-9605-CR-00164 (Tenn. Crim. App. at Jackson, Dec. 3, 1997), perm. to appeal denied, (Tenn. 1998).

The right to counsel and the right against self-incrimination may be waived, provided the waiver is made "voluntarily, knowingly, and intelligently." State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992) (citing Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966)). The relinquishment of the right must be voluntary in the sense that it is the product of a free and deliberate choice rather than the product of intimidation, coercion, or deception. Moreover, the waiver must be made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Stephenson, 878 S.W.2d at 544-545. In determining whether the statement has been made knowingly and voluntarily, the court must look to the totality of the circumstances. Middlebrooks, 840 S.W.2d at 326 (citations omitted).

The appellant argues that his lack of high school education, young age, lack of experience with law enforcement, and absence of an attorney combined with promises of leniency precluded a voluntary, knowing, and intelligent waiver of his rights. All that is required is that the defendant understand his or her rights and be capable of making a narrative of past events. State v. Ross, No. 03C01-9404-CR-00153 (Tenn. Crim. App. at Knoxville, June 15, 1995).

In the case *sub judice*, the trial court found that no promises of leniency were made to the appellant by the police. The record does not preponderate against this finding. Moreover, the Tennessee Constitution condemns only those promises of leniency which induce admissions or confessions that produce such a compelling influence over an individual's will that he is coerced and unable to make an autonomous decision among his available options. Santobello v. New York, 404 U.S. 257, 261-262, 92 S.Ct. 495, 498-499 (1971); Kelly, 603 S.W.2d at 728-729. The record fails to establish that the police exercised any compelling influence over the appellant or that his statements were induced by promises of leniency.

7

The proof shows that the appellant voluntarily came to each of the interviews. It is undisputed that the appellant was advised fully and completely of his *Miranda* rights and signed written waivers of his constitutional rights before making the statements to the investigators. He raised no questions about the waivers nor did he indicate that he did not understand any of them. The trial court obviously accredited the testimony of Detective Mann in finding a valid and knowing waiver of rights. His testimony is supported by both of the signed waiver forms.

Thus, the record clearly supports the trial court's findings and the appellant has failed to carry his burden. We conclude that, under the totality of the circumstances, the appellant understood his rights; voluntarily and effectively waived those rights; and voluntarily, intelligently, and understandingly gave both statements. Accordingly, the trial court's denial of appellant's motion to suppress was, therefore, proper. This issue is without merit.

## II. Reputation Evidence of Victim

Although the appellant concedes in his brief that this is not a case of self-defense, he contends that the appellant should have been permitted to testify to the victim's reputation under Tenn. R. Evid. 404(a)(2). Moreover, he asserts that the trial court should have heard the evidence of the victim's violent reputation before excluding the testimony. The State argues that the appellant has waived this issue because he failed to make an offer of proof. Also, the State contends that the trial court properly excluded the evidence because self-defense was not at issue in this case.

We agree. The evidence contains no record of this testimony; therefore, this issue is waived for the appellant's failure to make an offer of proof. See Alley v. State, 882 S.W.2d 810 (Tenn. Crim. App. 1994); Tenn. R. App. P. 36(a). On the merits, the issue remains unjustified. Initially, we note that the appellant was

8

allowed to testify at trial regarding the prior incident where the victim threatened the appellant with a gun. Moreover, the appellant testified that he feared the victim. For the reputation of the victim to be admissible, the evidence must be relevant to a material issue in the case. State v. Robinson, 971 S.W.2d 30, 40 (Tenn. Crim. App. 1997), perm. to appeal denied, (Tenn. 1998); State v. Ruane, 912 S.W.2d 766, 781 (Tenn. Crim. App. 1995). The only purpose for admission of the victim's reputation in this case would be to establish that he was the first aggressor. Clearly, the victim was not the initial aggressor. The appellant approached the unarmed victim and proceeded to shoot him three times, once in the back. We conclude that the trial court properly excluded testimony by the appellant of the victim's reputation because of its irrelevance to any essential element of this case. See Ruane, 912 S.W.2d at 781; Tenn. R. Evid. 401 and 402; see also State v. Taylor, 774 S.W.2d 163, 166 (Tenn. 1989) (holding defendant could not offer evidence of assault and threat by victim upon third party where issue of self defense was not raised). This issue is without merit.

Accordingly, the judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JAMES CURWOOD WITT, Judge

_____
JOHN EVERETT WILLIAMS, Judge